IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CR-00144-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMES WILLIAM PAUL SANDERSON, | ) | |
| | ) | |
| Defendant. | ) | |

On March 25, 2021, James William Paul Sanderson ("Sanderson" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 229]. On April 24, 2021, Sanderson, through counsel, filed a memorandum in support [D.E. 232]. On May 7, 2021, the United States responded in opposition [D.E. 234]. As explained below, the court denies Sanderson's motion.

I.

Sanderson was a high-volume, armed drug dealer in Robeson County, North Carolina. See Presentence Investigation Report ("PSR") [D.E. 157] ¶¶ 7–10. On September 20, 2011, pursuant to a written plea agreement, Sanderson pleaded guilty to distributing 50 grams or more of a cocaine base (crack) and a quantity of dihydrocodeinone (percocet). See [D.E. 1, 34, 35]. On June 11, 2013, Senior United States District Judge James C. Fox held a sentencing hearing, and after overruling Sanderson's objection to the PSR, Judge Fox adopted the facts set forth in the PSR. See Sentencing Tr. [D.E. 111] 4–78; Fed. R. Crim. P. 32(i)(3)(A)–(B). Judge Fox calculated Sanderson's offense

level to be 41, his criminal history category to be III, and his advisory guideline range to be 360 to 480 months' imprisonment. See Sentencing Tr. at 68–69. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Fox sentenced Sanderson to 480 months' imprisonment. See id. 72–78; [D.E. 173] 1–2. On appeal, the United States Court of Appeals for the Fourth Circuit vacated Sanderson's conviction and sentence and remanded for further proceedings. See [D.E. 113–15].

On February 17, 2015, Sanderson pleaded guilty pursuant to a plea agreement to distributing 50 grams or more of a cocaine base (crack) and a quantity of dihydrocodeinone (percocet). See [D.E. 155–56]. On June 30, 2015, Judge Fox held a second sentencing hearing. See [D.E. 171]. Judge Fox again calculated Sanderson's offense level to be 41, his criminal history category to be III, and his advisory guideline range to be 360 to 480 months' imprisonment. See Second Sentencing Tr. [D.E. 188] 3–4. After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Fox sentenced Sanderson to 240 months' imprisonment. See id. 11–27. Sanderson appealed, and the Fourth Circuit dismissed the appeal as untimely. See [D.E. 192–94].

On October 16, 2017, Sanders filed a motion to vacate his sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. See [D.E. 197]. On November 22, 2017, Sanderson's case was reassigned to the undersigned. See [D.E. 198]. On May 2, 2018, the government moved to dismiss. See [D.E. 204]. On January 11, 2019, the court granted the government's motion in part and referred Sanderson's remaining claim to Magistrate Judge James E. Gates for an evidentiary hearing and a memorandum and recommendation ("M&R"). See [D.E. 211]. On June 2, 2020, Magistrate Judge Gates issued a comprehensive M&R recommending that the court dismiss Sanderson's remaining section 2255 claim. See [D.E. 224]. On July 14, 2020, the court adopted the

2

findings and conclusions in the M&R and dismissed Sanderson's section 2255 motion. See [D.E. 227].

On March 25, 2021, Sanderson moved for compassionate release. See [D.E. 229]. The government opposes the motion. See [D.E. 234].

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine "that the defendant is not a danger to the safety of any other person or the community." Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements issued by the" United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

3

medical conditions of the defendant, (B) advanced age of the defendant when coupled with "a serious deterioration in physical and mental health" due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states that

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

     (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

     (ii) The defendant is—

        (I) suffering from a serious physical or medical condition,

        (II) suffering from a serious functional or cognitive impairment, or

        (III) experiencing deteriorating physical or mental health because of the aging process,

      that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

4

"an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, "the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir. 2021), cert. denied, No. 21-5624, 2021 WL 4733616 (U.S. Oct. 12, 2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "U.S.S.G. § 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31 (cleaned up). Nevertheless, section 1B1.13 provides

---

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1 (emphasis omitted).

5

informative policy when assessing an inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 283–84. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–09 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

### III.

Sanderson seeks compassionate release. See [D.E. 229, 232]. Sanderson sought no administrative relief before filing his motion for compassionate release. However, the government has not invoked section 3582's exhaustion requirement. See United States v. Muhammad, No. 20-7520, 2021 WL 4888393, at *3 (4th Cir. Oct. 20, 2021). Accordingly, the court addresses Sanderson's motion on the merits. See id.

Sanderson seeks compassionate release pursuant to section 3582(c)(1)(A). In support, Sanderson cites the COVID-19 pandemic, his high cholesterol, his undiagnosed chest pains and palpitations, his rehabilitative efforts, and his supportive family. See [D.E. 229, 232]. The "medical condition of the defendant" policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Sanderson argues that his high cholesterol and undiagnosed chest pains and palpitations warrant compassionate release to allow him "to obtain

6

proper medical care." [D.E. 232] 6. Sanderson also notes that the Centers for Disease Control and Prevention lists "serious heart conditions" as a medical condition that may place a person at heightened risk of serious infection from COVID-19. Id. at 4. However, Sanderson does not argue that the BOP is failing to treat him or to attempt to diagnose his chest pains and palpitations. And Sanderson is fully vaccinated against COVID-19. See [D.E. 235]; cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Being fully vaccinated reduces Sanderson's risk of serious infection. Accordingly, reducing Sanderson's sentence is inconsistent with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic and Sanderson's high cholesterol and undiagnosed chest pains and palpitations are extraordinary and compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). At the same time, Sanderson being vaccinated diminishes the weight of that assumption. Cf. Broadfield, 5 F.4th at 803. Regardless, the section 3553(a) factors counsel against reducing Sanderson's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Sanderson is 42 years old and is incarcerated for distributing 50 grams or more of cocaine base (crack) and a quantity of dihydrocodeinone (percocet). See PSR ¶¶ 1–6. Sanderson is responsible for distributing 10.657 kilograms of cocaine, 9.791 kilograms of cocaine base (crack),

7

and 12.7 grams of percocet. See id. ¶¶ 1–10. Sanderson possessed a firearm in connection with his drug trafficking. See id. ¶ 7. Sanderson also maintained a house, separate from his primary residence, for selling drugs. See id. Furthermore, Sanderson himself typically converted his cocaine into crack and boasted to law enforcement about his cooking method. See id. ¶ 9. Sanderson employed at least two people in his drug trafficking organization. See id. ¶¶ 8, 10. Sanderson is a violent recidivist with convictions for breaking and entering, larceny after breaking and entering, possession of marijuana (four counts), and assault with a deadly weapon. See id. ¶¶ 12–23.

Sanderson has been productive while incarcerated. Sanderson has earned his GED and has completed an ACE CDL course. See [D.E. 232] 6. Sanderson has also completed courses in carpentry, blueprint reading, education, and psychology. See id.; [D.E. 229] 2. Sanderson has also taken classes related to substance abuse and anger management. See [D.E. 229] 2.

The court must balance Sanderson's positive rehabilitative efforts with the extraordinary seriousness of his high-volume, armed drug trafficking and his history of violence. The court has also considered Sanderson's potential exposure to COVID-19, medical conditions, and release plan. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court recognizes Sanderson has a supportive family who would help him if released, though Sanderson has provided the court scant details about his release plan. See [D.E. 232] 6–7. Having considered the entire record, the steps that the BOP has taken to address COVID-19 and to treat Sanderson, the section 3553(a) factors, Sanderson's arguments, the government's persuasive response, and the need to punish Sanderson for his serious criminal behavior, to incapacitate Sanderson, to promote respect for the law, to deter others, and to protect society, the court denies Sanderson's motion for compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct.

8

1959, 1966–68 (2018); Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

As for Sanderson's request for home confinement, see [D.E. 232] 3–4, Sanderson seeks relief under the CARES Act. The CARES Act does not provide this court with the authority to grant home confinement. See United States v. Brummett, No. 20-5626, 2020 WL 5525871, at *2 (6th Cir. Aug. 19, 2020) (unpublished) ("[T]he authority to grant home confinement remains solely with the Attorney General and the BOP."); United States v. McCoy, No. 3:19-CR-35-KDB-DCK, 2020 WL 5535020, at *1–2 (W.D.N.C. Sept. 15, 2020) (unpublished); United States v. Gray, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (unpublished). To the extent Sanderson requests that the court merely recommend home confinement to the BOP, the court declines. See [D.E. 232] 3. Thus, the court dismisses Sanderson's request for home confinement.

IV.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 229], and DISMISSES defendant's request for home confinement.

SO ORDERED. This 21 day of October, 2021.

JAMES C. DEVER III
United States District Judge