IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:10-CR-144-D

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| JAMES WILLIAM PAUL SANDERSON, ) | |
| ) | |
| Defendant. ) | |

On February 4, 2022, James William Paul Sanderson ("Sanderson" or "defendant") moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 240]. On December 17, 2022, Sanderson, through counsel, filed a memorandum in support and an exhibit through counsel [D.E. 243]. On January 4, 2023, the United States responded in opposition [D.E. 248]. As explained below, the court denies Sanderson's motion.

I.

Sanderson was a high-volume, armed drug dealer in Robeson County, North Carolina. See Presentence Investigation Report ("PSR") [D.E. 157] ¶¶ 7–10. On September 20, 2011, pursuant to a written plea agreement, Sanderson pleaded guilty to distributing 50 grams or more of a cocaine base ("crack") and a quantity of dihydrocodeinone ("percocet"). See [D.E. 1, 34, 35]. On June 11, 2013, Senior United States District Judge James C. Fox held a sentencing hearing, and after overruling Sanderson's objection to the PSR, Judge Fox adopted the facts set forth in the PSR. See Sentencing Tr. [D.E. 111] 4–78; Fed. R. Crim. P. 32(i)(3)(A)–(B). Judge Fox calculated Sanderson's offense level to be 41, his criminal history category to be III, and his advisory guideline

range to be 360 to 480 months' imprisonment. See Sentencing Tr. at 68–69. After thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Fox sentenced Sanderson to 480 months' imprisonment. See id. 72–78; [D.E. 173] 1–2. On appeal, the United States Court of Appeals for the Fourth Circuit vacated Sanderson's conviction and sentence and remanded for further proceedings. See [D.E. 113–15].

On February 17, 2015, Sanderson pleaded guilty pursuant to a plea agreement to distributing 50 grams or more of a cocaine base ("crack") and a quantity of dihydrocodeinone ("percocet"). See [D.E. 155–56]. On June 30, 2015, Judge Fox held a second sentencing hearing. See [D.E. 171]. Judge Fox again calculated Sanderson's offense level to be 41, his criminal history category to be III, and his advisory guideline range to be 360 to 480 months' imprisonment. See Second Sentencing Tr. [D.E. 188] 3–4. After granting the government's motion for a downward departure and thoroughly considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), Judge Fox sentenced Sanderson to 240 months' imprisonment. See id. 11–27. Sanderson appealed, and the Fourth Circuit dismissed the appeal as untimely. See [D.E. 192–94].

On October 16, 2017, Sanderson filed a motion to vacate his sentence under 28 U.S.C. § 2255 based on ineffective assistance of counsel. See [D.E. 197]. On November 22, 2017, Sanderson's case was reassigned to the undersigned. See [D.E. 198]. On May 2, 2018, the government moved to dismiss. See [D.E. 204]. On January 11, 2019, the court granted the government's motion in part and referred Sanderson's remaining claim to Magistrate Judge James E. Gates for an evidentiary hearing and a memorandum and recommendation ("M&R"). See [D.E. 211]. On June 2, 2020, Magistrate Judge Gates issued a comprehensive M&R recommending that the court dismiss Sanderson's remaining section 2255 claim. See [D.E. 224]. On July 14, 2020, the

2

court adopted the findings and conclusions in the M&R and dismissed Sanderson's section 2255 motion. See [D.E. 227].

On March 25, 2021, Sanderson moved for compassionate release. See [D.E. 229]. On October 21, 2021, the court entered a comprehensive order and denied Sanderson's motion [D.E. 239].

On February 4, 2022, Sanderson moved for compassionate release [D.E. 240]. On December 17, 2022, Sanderson, through counsel, filed a memorandum in support and an exhibit through counsel [D.E. 243]. The government opposes the motion. See [D.E. 248].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson,

3

55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and

4

compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Sanderson submitted written requests for compassionate release to his warden on September 11, 2022. See [D.E. 243] 3. On October 5, 2022, Sanderson's warden denied his compassionate release request. See id. Therefore, Sanderson has satisfied the administrative exhaustion requirement, and the United States does not argue that Sanderson failed to exhaust his administrative remedies. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

Sanderson seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, the conditions in prison, his medical conditions (heart disease, hypertension, high cholesterol, obesity), his time served, and his rehabilitation efforts. See [D.E. 243] 4–10.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Sanderson is obese and has heart disease, hypertension, and high cholesterol. See [D.E. 243] 4–8. Sanderson's medical conditions are under control. See [D.E. 244, 248-1].

Sanderson argues that his medical conditions put him at heightened risk of serious infection or death from COVID-19. See [D.E. 243] 4–10. Sanderson, however, received two doses of the

5

Pfizer COVID-19 vaccine. See [D.E. 244] 51–52; [D.E. 243] 7. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Sanderson from COVID-19 whether he is in prison or not. See, e.g., Scalea,

6

2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46.

Besides the heightened risk of COVID-19 infection due to the conditions in prison, Sanderson does not otherwise allege that the BOP is not treating and monitoring his medical conditions or that he is unable to provide self-care while incarcerated. Moreover, arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current medical conditions at USP Atlanta where Sanderson is incarcerated, and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jspbop_covid-19_response (last visited May 2, 2023). Therefore, reducing Sanderson's sentence because of his risk factors and the general risk of COVID-19 in prison does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the conditions in prison, his medical conditions (heart disease, hypertension, high cholesterol, obesity), his time served, and his rehabilitation efforts together are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Sanderson's sentence. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

7

As for Sanderson's history and characteristics, Sanderson is 44 years old and was a high-volume, armed drug dealer in Robeson County, North Carolina. See PSR ¶¶ 7–10. On September 20, 2011, pursuant to a written plea agreement, Sanderson pleaded guilty to distributing 50 grams or more of a cocaine base ("crack") and a quantity of dihydrocodeinone ("percocet"). See [D.E. 1, 34, 35]. The court sentenced Sanderson to 480 months' imprisonment. See Sentencing Tr. at 72–78; [D.E. 173] 1–2. Sanderson appealed, and the Fourth Circuit vacated Sanderson's conviction and sentence and remanded for further proceedings. See [D.E. 113–15]. On February 17, 2015, Sanderson pleaded guilty pursuant to a plea agreement to distributing 50 grams or more of a cocaine base ("crack") and a quantity of dihydrocodeinone ("percocet"). See [D.E. 155–56]. The court sentenced Sanderson to 240 months' imprisonment. See id. 11–27. Sanderson appealed, and the Fourth Circuit dismissed his appeal as untimely. See [D.E. 192–94].

Sanderson's appalling criminal conduct is not new. Before his federal conviction, Sanderson had convictions for trespassing, breaking and entering, larceny after breaking and entering, driving after consuming alcohol under the age of 21, driving while impaired, possession of marijuana (four counts), resisting a public officer (two counts), assault with a deadly weapon, and simple assault. See PSR ¶¶ 12–23. Nonetheless, Sanderson has a generally positive record while in federal custody. Sanderson has earned his GED in federal prison, has participated in other educational courses, has completed substance abuse and anger management classes, has been sober for 12 years, and has marketable skills in framing and sheetrock installation. See [D.E. 243] 9–10. Sanderson, however, does not offer a release plan. The court has taken this information into account. See Pepper, 562 U.S. at 491; High, 997 F.3d at 187–91; Chambers, 956 F.3d at 671–75; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398.

8

The court must balance Sanderson's generally positive performance in federal custody against his appalling criminal conduct, his violent criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion, 142 S. Ct. at 2403–04; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58 F.4th at 821–24; United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered the COVID-19 pandemic, the conditions in prison, his medical conditions (heart disease, hypertension, high cholesterol, obesity), his time served, and his rehabilitation efforts.

Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Sanderson's arguments, the government's persuasive response, the need to punish Sanderson for his serious criminal behavior, to incapacitate Sanderson, to promote respect for the law, to deter others, and to protect society, the court denies Sanderson's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58 F.4th at 821–24; Roane, 51 F.4th at 551–52; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

9

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 240, 243].

SO ORDERED. This 2 day of May, 2023.

                                                JAMES C. DEVER III
                                                United States District Judge